**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| ERIC SMITH, on behalf of himself and other similarly situated laborers, | |
| Plaintiff, | Case No. |
| v. | Judge |
| MVP WORKFORCE, LLC d/b/a WORKFORCE, TWIN STAFFING, INC. and THE SEGERDAHL CORP., | Magistrate Judge |
| Defendants. | |

**CLASS ACTION COMPLAINT**

Plaintiff Eric Smith (Plaintiff"), on behalf of himself and all other similarly situated laborers, for his Complaint against MVP Workforce, LLC d/b/a Workforce ("Workforce"), Twin Staffing, Inc. ("Twin Staffing") and Segerdahl Graphics, Inc. ("Segerdahl") (collectively "Defendants"), states as follows:

**I.        INTRODUCTION**

1.        This lawsuit arises under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII"); and under the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981 ("Section 1981"), and challenges Defendants' discrimination against African-American laborers in their practices of making assignments to work. Workforce is a temporary staffing agency that assigns temporary laborers in its labor pool to its third party client companies for a fee, including but not limited to Defendant Segerdahl. Within the period of May 25, 2014 to the present, Plaintiff sought work assignments from Workforce's Cicero, Illinois Branch Office ("Workforce Cicero Office") to Workforce's client companies, including but not limited to Segerdahl, but on one or more occasions was not assigned to one or more of Workforce's client companies because of his race as an African American, including Segerdahl.

Twin Staffing is an alter ego of Workforce and/or joint employer of temporary laborers assigned from the Workforce Cicero Office which, on information, Workforce uses to make assignments to client companies of Workforce, including companies who seek contracts with minority owned businesses such as Segerdahl.

2.     Plaintiff will seek to certify a class pursuant to Federal Rule of Civil Procedure 23(a) and (b) to pursue his Title VII and Section 1981 claims on behalf of himself and similarly situated African-American laborers.  This Complaint names Workforce and Twin Staffing for their pattern and practice of excluding or severely restricting job assignments for African-American laborers to multiple client companies and names client company Segerdahl, on of Workforce and Twin Staffing's client companies, with whom Workforce and Twin Staffing bear joint responsibility, for the pattern or practice of excluding or severely restricting job assignments for African-American laborers to Segerdahl.  Because all referrals for employment at issue in this action were made to client companies, including but not limited to Segerdahl, by Defendants Workforce and Twin Staffing through Workforce's branch office in Cicero, Illinois, the claims encompassed by this action warrant certification of a single class, with a separate subclass for client company Segerdahl.

## II.      JURISDICTION AND VENUE

3.     This Court has jurisdiction over Plaintiff's Title VII and § 1981 claims pursuant to 28 U.S.C. § 1331, arising under arising under 42 U.S.C. § 2000e, *et seq*. and 42 U.S.C. § 1981.

4.     Venue is proper in this judicial district as a substantial number of the facts and events giving rise to Plaintiff's claims occurred in this judicial district and as Defendants maintained their offices and transacted business within this jurisdiction.

5.     On July 14, 2017, Plaintiff Smith filed charges of discrimination against Workforce and Segerdahl.  On February 26, 2018, the EEOC issued a Notice of the Right to Sue to Mr. Smith for his charges against Workforce and Segerdahl, attached hereto as Group Exhibit A.

6.     The case arising under Title VII against Workforce and Segerdahl is timely filed.

## III.     PARTIES

**A.     <u>Plaintiff</u>**

7.     Plaintiff Eric Smith:

   a.     is African American and resides in this judicial district;

   b.     is and, at all relevant times, has been qualified to perform work for Workforce and/or Twin Staffing;

   c.     sought work through Workforce's branch office located in Cicero, Illinois within the period of May 29, 2014 through the present;

   d.     is and, at all relevant times, has been qualified to perform work for the client companies of Workforce and Twin Staffing, including but not limited to Segerdahl;

   e.     is and, at all relevant times, has been available for referral for employment at each of Workforce and Twin Staffing's client companies, including but not limited to Segerdahl, through Workforce and/or Twin Staffing;

   f.     is and, at all relevant times, has been a laborer seeking work assignments from Workforce in the types of jobs that were available at Workforce's client companies, including but limited to at Segerdahl;

g.    is and, at all relevant times, has been an "employee" of Workforce and Twin Staffing as that term is defined in 42 U.S.C. § 2000e(f) and 42 U.S.C. § 1981; and

h.    is and, at all relevant times, has been an "employee" of Segerdahl as that term is defined in 42 U.S.C. § 2000e(f) and 42 U.S.C. § 1981.

**B.**    <u>**Defendants**</u>

8.    Defendant Workforce:

a.    is a corporation organized under the laws of the State of Delaware;

b.    is and, at all relevant times, has been located in and conducted business in Illinois and within this judicial district;

c.    is and, at all relevant times, has been an "employment agency" as that term is defined in 42 U.S.C. § 2000e(c);

d.    is and, at all relevant times, has operated as an employment agency with a branch office located at 5017 W. Cermak Road in Cicero, Illinois ("Workforce Cicero Office");

e.    is and, at all relevant times, has been a day and temporary labor service agency as defined in the Illinois Day and Temporary Labor Services Act, 820 ILCS 175/1 *et seq*.; and

f.    is and, at all relevant times, has been an "employer" as that term is defined in 42 U.S.C. § 2000e(b) and 42 U.S.C. § 1981(c).

9.    Defendant Twin Staffing:

a.    is a corporation organized under the laws of the State of Delaware;

b.    is and, at all relevant times, has been located in and conducted business in Illinois and within this judicial district;

c.  is and, at all relevant times, has been an "employment agency" as that term is defined in 42 U.S.C. § 2000e(c).

d.  is and, at all relevant times, has operated as an employment agency through the Workforce Cicero Office;

e.  is and, at all relevant times, has been a day and temporary labor service agency as defined in the Illinois Day and Temporary Labor Services Act, 820 ILCS 175/1 *et seq.*;

f.  is and, at all relevant times, has been an "employer" as that term is defined in 42 U.S.C. § 2000e(b) and 42 U.S.C. § 1981(c);

g.  is and, at all relevant times, has been utilized by Workforce to make assignments to client companies of Workforce;

h.  is and, at all relevant times, has been utilized by Workforce to make assignments to client companies of Workforce, including but not limited to Segerdahl, who seek contracts with minority owned businesses such as Segerdahl.

i.  is and, at all relevant times, has been an alter ego of Workforce; and

j.  is and, at all relevant times, has been a joint employer of temporary laborers assigned from the Workforce Cicero Office.

10.  Defendant Segerdahl:

a.  is a corporation organized under the laws of the State of Illinois;

b.  is located in and has, at all relevant times, conducted business in Illinois and within this judicial district; and

c.  is and, at all relevant times, has been a joint "employer" of Plaintiff as that term is defined in 42 U.S.C. § 2000e(b) and 42 U.S.C. § 1981(c).

## IV. FACTUAL BACKGROUND

18.     The temporary staffing industry is one of the fastest-growing sectors of the modern job market. Upon information, there are more than 300 temporary staffing agencies in Illinois with over 900 branch offices throughout the state.  Like for-profit firms in most industries, temporary staffing agencies stay in business by being responsive to the preferences of their customers, also known as "client companies."  Accordingly, temporary staffing agencies purport to act on the requested preferences of their client companies when making referrals of laborers.

20.     At all relevant times, Workforce is or has been in the business of providing third-party client companies, including but not limited to Segerdahl, with low- and moderately-skilled laborers to fill jobs on a daily basis through the Workforce Cicero Office.

21.     At all relevant time, Workforce has acted as an agent of its client companies, including but not limited to Segerdahl, in recruiting, training, assigning and paying laborers to work at its client companies, including but not limited to Segerdahl.

22.     Twin Staffing is and, at all relevant times, has been nominally owned and operated by Taunesha Carpenter, an African American female. *See* Illinois Secretary of State Detail Report for Twin Staffing, Inc., attached hereto as Exhibit B.

23.     For client companies who seek or, at all relevant times, have sought contracts with minority and/or female-owned businesses, Workforce has made assignments of temporary laborers from Workforce's Cicero Office but the contract for the laborers has been nominally with Twin Staffing. *See* November 30, 2016 Deposition Transcript of Daniel Barnett, Manager of MVP Workforce, LLC, in the matter of *Hernandez v. Segerdahl Graphics*, Case No. 15 L 10221, 48:22 – 53:18, attached hereto as Exhibit C.

24. However, despite the fact that client companies who seek or, at all relevant times, have sought contracts with minority and/or female-owned businesses, have nominally had the contract for the laborers with Twin Staffing, Workforce has in fact made the assignment of temporary laborers from Workforce's Cicero Office to such clients. Specifically,

a. Such assignments have been made by Workforce employees;

b. Such assignments have been made through Workforce's Cicero Office;

c. Laborers on such assignments have been transported by Workforce drivers to the work sites of such clients in vehicles operated by Workforce and its employees;

d. Such contracts have been negotiated by management of Workforce;

e. The parties designated to receive communication related to such contracts are management employees of Workforce;

f. All invoices for laborers nominally sent to client companies by Twin Staffing direct payments from the client company to be made to Workforce;

g. Twin Staffing's operation is largely financed by the owners and other management of Workforce; and

h. Twin Staffing does not itself operate an office from which temporary laborers are dispatched to client companies.

25. On information, Segerdahl is a marketing and industrial printing company. *See* www.sg360.com/industry_solutions/ (last visited May 29, 2018).

26. On information, Segerdahl has or, at all relevant times, has had contracts with governmental agencies for printing. For example, Segerdahl has, during the relevant period, had a contract to print materials for the Social Security Administration.

27.     During the relevant period, it was to Segerdahl's benefit to have a subcontract for laborers with a minority-owned business.

28.     At all relevant times, Twin Staffing is and has been an alter ego of Workforce.

29.     Alternatively, at all relevant times, Twin Staffing is and has been a joint employer of laborers assigned through Workforce's Cicero Office to its various client companies, including but not limited to Segerdahl.

30.     At all relevant time, Twin Staffing, along with Workforce, has acted as an agent of their joint client companies, including but not limited to Segerdahl, in recruiting, training, assigning and paying laborers to work at its client companies, including but not limited to Segerdahl.

31.     At all relevant times, Workforce, along with Twin Staffing, acts and has acted as a joint employer with the client companies in the assignment of laborers to work at the client companies, including but not limited to Segerdahl.

32.     As part of its business, Workforce, along with Twin Staffing, is constantly engaged in recruiting low- and moderately-skilled laborers to fill ongoing work orders.  When a laborer seeks an assignment through Workforce, such laborers are making themselves available for referral to fill daily jobs at any of the third-party client companies to which Workforce supplies labor, including but not limited to Segerdahl.

33.     On information from former Workforce Drivers and Dispatchers of Personnel Staffing Group, LLC d/b/a MVP ("MVP") who helped fill orders for Workforce, many of Workforce's client companies, including but not limited to Segerdahl, directed Workforce and/or Twin Staffing not to send African American laborers to work at their company.

34.     On information from former Workforce Drivers and MVP Dispatchers who helped fill orders for Workforce, Workforce, along with Twin Staffing, complied with such discriminatory requests.

35.     Workforce publicizes the types of jobs to which it refers laborers through newspaper advertising and word-of-mouth advertising from Workforce recruiters, dispatchers and drivers.  The majority of the Workforce Cicero branch office's recruitment efforts are in predominantly Latino neighborhoods in Spanish-language publications in the Chicago area.

36.     In addition to active recruiting efforts, Workforce permits individuals who walk into its Cicero Branch Office to seek work assignments.

37.     When an individual comes to Workforce's Cicero Office seeking work, an Workforce employee typically takes contact information for the individual and either refers the individual for employment or informs the individual that s/he will be contacted when a daily job becomes open to which s/he can be referred.

38.     Beginning in or about September 2016, the Plaintiff Smith sought work assignments at the Workforce Cicero Office on multiple occasions.

39.     On the occasions that Plaintiff Smith sought work assignments from Workforce's Cicero Office, he was directed to put his name and contact information on a sign-in sheet that indicated the order in which he had arrived.

40.     When Plaintiff Smith came to the Workforce Cicero Office to seek a work assignment, he often waited in the Workforce office in an attempt to receive a work assignment.

41.     Other times, Workforce Dispatchers at the Cicero Office told Plaintiff he would be called when work became available and, therefore, Plaintiff left his contact information in order that he could be called for work assignments.

42.     When a temporary laborer seeks work from a staffing agency, they generally seek work at any client company, not a specific one.

43.     When the named Plaintiff Smith sought work from Workforce's Cicero Office, he was seeking work at any of Workforce's client companies, not a specific one.

44.     The jobs for which the Workforce Cicero Office refers candidates do not require any special skills, training or qualifications, including but not limited to the jobs at Segerdahl.

45.     From May 29, 2014 through the present, Workforce has referred for employment thousands of laborers to its client companies, including but not limited to Segerdahl.

46.     Within the period of May 29, 2014 through the present, Plaintiff Smith and, upon information and belief, members of the Class, sought work assignments at the Workforce Cicero Office while work assignments were being made to the client companies of Workforce, including but not limited to Segerdahl, but did not receive such assignments.

47.     Within the period of approximately September 2016 to the present, Plaintiff has observed that typically between a quarter and a third of the laborers at the Workforce Cicero Office seeking work assignments were African American.

48.     Within the period of approximately September 2016 to the present, Plaintiff has observed at the Workforce Cicero Office that many laborers who appeared Hispanic and spoke Spanish were assigned to work, while laborers who appeared to be African American were not assigned work.

49.     Within the period of approximately September 2016 to the present, Plaintiff was at the Workforce Cicero Office available to work or available to be assigned for work by phone on numerous occasions on days when positions were available at client companies of Workforce and/or Twin Staffing through the Cicero Office, including but not limited to work assignments at Segerdahl, for which Plaintiff was qualified, but he did not receive an assignment.

50.     In fact, within the period of approximately September 2016, Plaintiff Smith has been assigned to work through Workforce's Cicero Office on only a few occasions when he was present at Workforce's Cicero Office.

51.     Plaintiff is and, at all relevant times, has been qualified to work at the client companies of Workforce and/or Twin Staffing which are served by Workforce's Cicero Office, including but not limited to Segerdahl.

52.     Other African-American laborers who sought work assignments from Workforce's Cicero Office were likewise qualified to work at the client companies of Workforce and/or Twin Staffing which are served by Workforce's Cicero Office, including but not limited to Segerdahl.

53.     Workforce failed to assign Plaintiff to work at several of the client companies of Workforce and/or Twin Staffing, including but not limited to Segerdahl, because of his race.

54.     Workforce failed to assign other similarly situated African-American laborers to work at the client companies of Workforce and/or Twin Staffing, including but not limited to Segerdahl, because of their race.

55.     Workforce and/or Twin Staffing assigned other non-African-American laborers to work at the client companies of Workforce and/or Twin Staffing, including but not limited to Segerdahl, to fill jobs that required no special training, education, knowledge or experience.

56.     Workforce and/or Twin Staffing assigned other, non-African-American laborers to work at its client companies, including but not limited to Segerdahl, even though they sought work assignments after Plaintiff and other similarly situated African American laborers, who were not given assignments.

57.     Segerdahl had the authority, and exercised that authority, to select the characteristics of laborers that Workforce and/or Twin Staffing assigned and did not assign to

work at its facility. Workforce, along with Twin Staffing, implemented the instructions provided by the Segerdahl about which laborers to assign to work at Segerdahl.

58.     Other client companies of Workforce and/or Twin Staffing served by Workforce's Cicero Office, currently unknown, had the authority, and exercised that authority, to select the characteristics of laborers that Workforce and/or Twin Staffing assigned and did not assign to work at its facility. Workforce, along with Twin Staffing, implemented the instructions provided by those client companies about which laborers to assign to work at those client companies.

59.     Each client company, including but not limited to Segerdahl, along with Workforce and Twin Staffing, exercised authority jointly over the choice of which laborers to assign to work at each client company's worksite, when and how to discipline workers who were assigned to work at the client companies and the time, place, and scope of the work to be performed.

60.     Workforce, along with Twin Staffing, failed to assign Plaintiff and other similarly situated African-American laborers out of Workforce's Cicero Office to work at the client companies of Workforce and/or Twin Staffing, including but not limited to Segerdahl, because it was complying with a discriminatory request its client companies, including but not limited to Segerdahl, to steer African-American laborers away from that client company.

## V.     CLASS ACTION ALLEGATIONS

61.     The Plaintiff's claims are susceptible to class certification pursuant to Rule 23(a) and (b)(3), Fed.R.Civ.P.

62.     The Class which Plaintiff seeks to certify against Workforce and Twin Staffing defined as follows "Plaintiff and all other African-Americans who sought work assignments through MVP Workforce, LLC and/or Twin Staffing, Inc. at the Workforce Cicero Office and

were eligible to work at one or more of the client companies of MVP Workforce, LLC and/or Twin Staffing, Inc. at any time between May 29, 2014 and the date of judgment but who, on one or more occasions, were not assigned to work at one of these client companies by MVP Workforce, LLC and/or Twin Staffing, Inc."

63.     In addition, a separate Subclass Plaintiff seeks to certify a subclass for claims against Segerdahl ("Segerdahl Subclass") defined as follows: "Plaintiff and all other African-Americans who sought work assignments through MVP Workforce, LLC and/or Twin Staffing, Inc. at the Workforce Cicero Office and were eligible to work at the Segerdahl Corp. at any time between May 29, 2014 and the date of judgment but who, on one or more occasions, were not assigned to work at the Segerdahl Corp. by MVP Workforce, LLC and/or Twin Staffing, Inc."

64.     Certification of the class and subclasses pursuant to Rule 23(a) and (b)(3) is warranted because:

      a.     This is an appropriate forum for these claims because, among other reasons, jurisdiction and venue are proper, and the Defendants are located in this District.

      b.     The class is so numerous that joinder of all members is impracticable. Defendants jointly employed thousands of individuals who were assigned to daily laborer jobs through the Workforce Cicero Office between May 29, 2014 and the date of judgment. On information and belief, there were thousands of African-American laborers who sought assignments to work at the Workforce Cicero Office to daily laborer jobs at employers, including but not limited to Segerdahl.

      c.     One or more questions of law or fact are common to the class, including:

(i)     Whether Defendants Workforce and Twin Staffing have or have had a policy or practice in place in its assignments to its client companies, including but not limited to Segerdahl that has resulted in discrimination against African American laborers;

(ii)    Whether the client companies of Defendants Workforce and Twin Staffing, including but not limited to Segerdahl, have engaged in a pattern or practice of denying employment to African-American laborers because of their race;

(iii)   Whether the client companies of Defendants Workforce and Twin Staffing, including but not limited to Segerdahl, directed Workforce, along with Twin Staffing, to refrain from assigning African-American laborers to work at that client company's worksite;

(iv)    Whether Workforce, along with Twin Staffing, and each of their client companies, including but not limit to Segerdahl, are joint employers of the laborers assigned to work at those client companies;

(v)     Whether the choices Workforce, along with Twin Staffing, made of which laborers it assigned for work through the Workforce Cicero Office were made in conformity with directions provided by their client companies, including but not limited to Segerdahl;

(vi)    Whether the client companies of Workforce and/or Twin Staffing that were served by the Workforce Cicero Office failed to exercise reasonable care to prevent their agents, Workforce and/or Twin Staffing, from engaging in discriminatory hiring practices;

(vii)   Whether the conduct complained of herein constitutes a violation of Title VII;

(viii)  Whether the conduct complained of herein constitutes a violation of Section 1981;

(ix)    Whether injunctive relief is warranted against Workforce, Twin Staffing and/or the client companies of Workforce and/or Twin Staffing that were served by the Workforce Cicero Office, including but not limited to Segerdahl.

d.      Plaintiff will fairly and adequately represent and protect the interests of

the Class members. Plaintiff's Counsel are competent and experienced in

litigating discrimination and other employment class actions;

e.   The class representative and the members of the class have been subject to, and challenge, the same practices;

f.   Issues common to the class predominate over issues unique to individual class members, and pursuit of the claims as a class action is superior to other available methods for the fair and efficient resolution of this controversy;

g.   Adjudication of these claims as a class action can be achieved in a manageable manner.

65.   Pursuit of the claims set forth herein through a class action is an appropriate method for the fair and efficient adjudication of this lawsuit.

**COUNT I**
**Violation of Section 1981 – Race-based Discrimination**
**Plaintiff on behalf of himself and a class of similarly situated African American laborers as laborers as against Defendant Segerdahl**
*Class Action*

Plaintiff hereby incorporates and re-alleges paragraphs 1 through 65 as though set forth herein.

66.   This Count arises under Section 1981 for Defendant Segerdahl's discriminatory practices in filling its labor force through its agents or employment agencies, Workforce and/or Twin Staffing, described more fully herein and specifically in paragraphs 18 – 60, *supra*, resulting in the disparate treatment of Plaintiff and a class of African-American laborers who sought work through the Workforce Cicero Office.

67.   As described more fully herein and specifically in paragraphs 18 – 60, *supra*, Defendant Segerdahl intentionally discriminated against Plaintiff based on his race, African American, thereby violating the Civil Rights Act of 1866, as amended, 42 U.S.C. §1981.

68.   Defendant Segerdahl made discriminatory requests of its agents for assigning laborers, Workforce and Twin Staffing, in that Defendant Segerdahl requested that its agents

steer Plaintiff and other similarly situated African Americans away from work at Segerdahl based on their race, African American.

69.     Defendant Segerdahl's discrimination against African-American laborers who sought work through the Workforce Cicero Office was based on Plaintiff's and similarly situated laborers' race, African American, and in violation of 42 U.S.C. § 1981.

70.     As a direct and proximate result of the acts or omissions of Defendant Segerdahl alleged herein and specifically in paragraphs 18 – 60, *supra*, Plaintiff and similarly situated African American job applicants suffered damages of a pecuniary and non-pecuniary nature, humiliation, and degradation.

71.     Defendant Segerdahl's conduct was willful and/or reckless, warranting the imposition of punitive damages.

## COUNT II
### Violation of Section 1981 – Race-based Discrimination
### Plaintiff on behalf of himself and a class of similarly situated African American laborers as laborers as against Defendants Workforce, Twin Staffing and Segerdahl
### *Class Action*

Plaintiff hereby incorporates and re-alleges paragraphs 1 through 71 as though set forth herein.

72.     This Count arises under Section 1981 for Defendants Workforce and Twin Staffing's discriminatory practices in assigning laborers to Segerdahl described more fully herein and specifically in paragraphs 18 – 60, *supra*, resulting in disparate treatment of Plaintiff and a class of African American laborers.

73.     In making assignments to Segerdahl, Defendants Workforce and Twin Staffing engaged in discriminatory assignment practices against Plaintiff and other similarly situated African American laborers on the basis of their race, African American, as described more fully herein and specifically in paragraphs 18 - 60, *supra*, thereby violating the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981.

74.     As described more fully herein and specifically in paragraphs 18 - 60, *supra*, Defendants Workforce and Twin Staffing engaged in a pattern and practice of racial discrimination against Plaintiff and other similarly situated African American laborers in making assignments to Segerdahl based on their race, African American.

75.     As described more fully herein and specifically in paragraphs 18 - 60, *supra*, Defendants Workforce and Twin Staffing's discrimination against Plaintiff and other similarly situated African American laborers to Segerdahl was intentional.

76.     Defendants Workforce and Twin Staffing failed or refused to assign African American applicants to work at Segerdahl in favor of Latino employees on the basis of their race, African American, as described more fully herein and in paragraphs 18 - 60, *supra*.

77.     Defendants Workforce and Twin Staffing's failure to assign Plaintiff and other similarly situated African-American laborers to work at Segerdahl was, in part, because it was complying with a discriminatory request from Segerdahl, Workforce and Twin Staffing's client, to steer African American laborers away from Segerdahl in favor of Latino laborers.

78.     Segerdahl's request to Workforce and Twin Staffing to steer Plaintiff and other similarly situated African American laborers away from Segerdahl was based on their race, African American.

79.     Defendants Workforce and Twin Staffing's conduct in not assigning Plaintiff and other similarly situated African American laborers to work at Segerdahl was willful and/or reckless, warranting the imposition of punitive damages.

80.     Defendant Segerdahl's conduct in directing Workforce and/or Twin Staffing to steer African American laborers away from Segerdahl in favor of Latino laborers was willful and/or reckless, warranting the imposition of punitive damages.

81.     As a direct and proximate result of the willful and reckless acts or omissions of Defendants Workforce, Twin Staffing and Segerdahl alleged herein and specifically in paragraphs 18 – 60, *supra*, Plaintiff and similarly situated African American laborers have suffered damages of a pecuniary and non-pecuniary nature, humiliation, and degradation.

## COUNT III
### Violation of Section 1981 – Race-based Discrimination
### Plaintiff on behalf of himself and a class of similarly situated African American laborers as laborers as against Defendants Workforce and Twin Staffing
### *Class Action*

Plaintiff hereby incorporates and re-alleges paragraphs 1 through 81 as though set forth herein.

82.     This Count arises under Section 1981 for Defendants Workforce and Twin Staffing's discriminatory practices in assigning laborers to client companies other than Segerdahl, currently unknown, described more fully herein and specifically in paragraphs 18 – 60, *supra*, resulting in disparate treatment of Plaintiff and a class of African American laborers.

83.     In making assignments to client companies other than Segerdahl, currently unknown, Defendants Workforce and Twin Staffing engaged in discriminatory assignment practices against Plaintiff and other similarly situated African American laborers on the basis of their race, African American, as described more fully herein and specifically in paragraphs 18 - 60, *supra*, thereby violating the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981.

84.     As described more fully herein and specifically in paragraphs 18 - 60, *supra*, Defendants Workforce and Twin Staffing engaged in a pattern and practice of racial discrimination against Plaintiff and other similarly situated African American laborers in making assignments to client companies other than Segerdahl, currently unknown, based on their race, African American.

85.     As described more fully herein and specifically in paragraphs 18 - 60, *supra*, Defendants Workforce and Twin Staffing's discrimination against Plaintiff and other similarly situated African American laborers to client companies other than Segerdahl, currently unknown, was intentional.

86.     Defendants Workforce and Twin Staffing failed or refused to assign African American applicants to work at client companies other than Segerdahl, currently unknown, in favor of Latino employees on the basis of their race, African American, as described more fully herein and in paragraphs 18 - 60, *supra*.

87.     Defendants Workforce and Twin Staffing's failure to assign Plaintiff and other similarly situated African-American laborers to work at client companies other than Segerdahl, currently unknown, was, in part, because on information and belief it was complying with a discriminatory request from client companies other than Segerdahl, currently unknown, Workforce and Twin Staffing's client, to steer African American laborers away from such client companies in favor of Latino laborers.

88.     Workforce and Twin Staffing's client companies' request to steer Plaintiff and other similarly situated African American laborers away was based on their race, African American.

89.     Defendants Workforce and Twin Staffing's conduct in not assigning Plaintiff and other similarly situated African American laborers to work at client companies other than Segerdahl, currently unknown, was willful and/or reckless, warranting the imposition of punitive damages.

90.     As a direct and proximate result of the willful and reckless acts or omissions of Defendants Workforce, Twin Staffing and client companies other than Segerdahl, currently unknown, alleged herein and specifically in paragraphs 18 – 60, *supra*, Plaintiff and similarly

situated African American laborers have suffered damages of a pecuniary and non-pecuniary nature, humiliation, and degradation.

### COUNT IV
**Violation of Title VII-Race-based Discrimination–Disparate Treatment**
**Plaintiff on behalf of himself and a class of similarly situated African American laborers as laborers as against Defendant Segerdahl**
*Class Action*

Plaintiff hereby incorporates and re-alleges paragraphs 1 through 91 as though set forth herein.

91.     This Count arises under Title VII for Defendant Segerdahl's discriminatory practices in filling its labor force through its agents or employment agencies, Workforce and/or Twin Staffing, described more fully herein and specifically in paragraphs 18 – 60, *supra*, resulting in the disparate treatment of Plaintiff and a class of African-American laborers who sought work through the Workforce Cicero Office.

92.     As described more fully herein and specifically in paragraphs 18 – 60, *supra*, Defendant Segerdahl intentionally discriminated against Plaintiff based on his race, African American, thereby violating Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et. seq*.

93.     Defendant Segerdahl made discriminatory requests of its agents for assigning laborers, Workforce and Twin Staffing, in that Defendant Segerdahl requested that its agents steer Plaintiff and other similarly situated African Americans away from work at Segerdahl based on their race, African American.

94.     Defendant Segerdahl's discrimination against African-American laborers who sought work through the Workforce Cicero Office was based on Plaintiff's and similarly situated laborers' race, African American, and in violation of Title VII, 42 U.S.C. § 2000e, *et. seq*.

95. As a direct and proximate result of the acts or omissions of Defendant Segerdahl alleged herein and specifically in paragraphs 18 – 60, *supra*, Plaintiff and similarly situated African American job applicants suffered damages of a pecuniary and non-pecuniary nature, humiliation, and degradation.

96. Defendant Segerdahl's conduct was willful and/or reckless, warranting the imposition of punitive damages.

97. As described more fully in paragraphs 18 - 67, *supra*, Defendant Segerdahl engaged in a pattern and practice of intentional discrimination against Plaintiff based on their race, African American, thereby violating Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et. seq*.

98. As described more fully in paragraphs 18 - 67, *supra*, Defendant Segerdahl engaged in a pattern and practice of intentional discrimination against other similarly situated African American laborers based on their race, African American, thereby violating Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et. seq*.

99. As a direct and proximate result of the above-alleged acts or omissions of Defendant Segerdahl, Plaintiff and other similarly situated African-American laborers suffered damages of a pecuniary and non-pecuniary nature, humiliation, and degradation.

100. Defendant Segerdahl's conduct was willful and/or reckless, warranting the imposition of punitive damages.

### COUNT V
**Violation of Title VII-Race-based Discrimination–Disparate Treatment**
**Plaintiff on behalf of himself and a class of similarly situated African American laborers as laborers as against Defendants Workforce, Twin Staffing and Segerdahl**
***Class Action***

Plaintiff hereby incorporates and re-alleges paragraphs 1 through 100 as though set forth herein.

101. This Count arises under Title VII for Defendants Workforce and Twin Staffing's discriminatory practices in assigning laborers to Segerdahl described more fully herein and specifically in paragraphs 18 – 60, *supra*, resulting in disparate treatment of Plaintiff and a class of African American laborers.

102. In making assignments to Segerdahl, Defendants Workforce and Twin Staffing engaged in discriminatory assignment practices against Plaintiff and other similarly situated African American laborers on the basis of their race, African American, as described more fully herein and specifically in paragraphs 18 - 60, *supra*, thereby violating Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et. seq*.

103. As described more fully herein and specifically in paragraphs 18 - 60, *supra*, Defendants Workforce and Twin Staffing engaged in a pattern and practice of racial discrimination against Plaintiff and other similarly situated African American laborers in making assignments to Segerdahl based on their race, African American.

104. As described more fully herein and specifically in paragraphs 18 - 60, *supra*, Defendants Workforce and Twin Staffing's discrimination against Plaintiff and other similarly situated African American laborers to Segerdahl was intentional.

105. Defendants Workforce and Twin Staffing failed or refused to assign African American applicants to work at Segerdahl in favor of Latino employees on the basis of their race, African American, as described more fully herein and in paragraphs 18 - 60, *supra*.

106. Defendants Workforce and Twin Staffing's failure to assign Plaintiff and other similarly situated African-American laborers to work at Segerdahl was, in part, because it was complying with a discriminatory request from Segerdahl, Workforce and Twin Staffing's client, to steer African American laborers away from Segerdahl in favor of Latino laborers.

107.     Segerdahl's request to Workforce and Twin Staffing to steer Plaintiff and other similarly situated African American laborers away from Segerdahl was based on their race, African American.

108.     Defendants Workforce and Twin Staffing's conduct in not assigning Plaintiff and other similarly situated African American laborers to work at Segerdahl was willful and/or reckless, warranting the imposition of punitive damages.

109.     Defendant Segerdahl's conduct in directing Workforce and/or Twin Staffing to steer African American laborers away from Segerdahl in favor of Latino laborers was willful and/or reckless, warranting the imposition of punitive damages.

110.     As a direct and proximate result of the willful and reckless acts or omissions of Defendants Workforce, Twin Staffing and Segerdahl alleged herein and specifically in paragraphs 18 – 60, *supra*, Plaintiff and similarly situated African American laborers have suffered damages of a pecuniary and non-pecuniary nature, humiliation, and degradation.

**COUNT VI**
**Violation of Title VII-Race-based Discrimination–Disparate Treatment**
**Plaintiff on behalf of himself and a class of similarly situated African American laborers as laborers as against Defendants Workforce and Twin Staffing**
***Class Action***

Plaintiff hereby incorporates and re-alleges paragraphs 1 through 110 as though set forth herein.

111.     This Count arises under Title VII for Defendants Workforce and Twin Staffing's discriminatory practices in assigning laborers to client companies other than Segerdahl, currently unknown, described more fully herein and specifically in paragraphs 18 – 60, *supra*, resulting in disparate treatment of Plaintiff and a class of African American laborers.

112.     In making assignments to client companies other than Segerdahl, currently unknown, Defendants Workforce and Twin Staffing engaged in discriminatory assignment

practices against Plaintiff and other similarly situated African American laborers on the basis of their race, African American, as described more fully herein and specifically in paragraphs 18 - 60, *supra*, thereby violating Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et. seq*.

113.    As described more fully herein and specifically in paragraphs 18 - 60, *supra*, Defendants Workforce and Twin Staffing engaged in a pattern and practice of racial discrimination against Plaintiff and other similarly situated African American laborers in making assignments to client companies other than Segerdahl, currently unknown, based on their race, African American.

114.    As described more fully herein and specifically in paragraphs 18 - 60, *supra*, Defendants Workforce and Twin Staffing's discrimination against Plaintiff and other similarly situated African American laborers to client companies other than Segerdahl, currently unknown, was intentional.

115.    Defendants Workforce and Twin Staffing failed or refused to assign African American applicants to work at client companies other than Segerdahl, currently unknown, in favor of Latino employees on the basis of their race, African American, as described more fully herein and in paragraphs 18 - 60, *supra*.

116.    Defendants Workforce and Twin Staffing's failure to assign Plaintiff and other similarly situated African-American laborers to work at client companies other than Segerdahl, currently unknown, was, in part, because on information and belief it was complying with a discriminatory request from client companies other than Segerdahl, currently unknown, Workforce and Twin Staffing's client, to steer African American laborers away from such client companies in favor of Latino laborers.

117.    Workforce and Twin Staffing's client companies' request to steer Plaintiff and other similarly situated African American laborers away was based on their race, African American.

118.    Defendants Workforce and Twin Staffing's conduct in not assigning Plaintiff and other similarly situated African American laborers to work at client companies other than Segerdahl, currently unknown, was willful and/or reckless, warranting the imposition of punitive damages.

119.    As a direct and proximate result of the willful and reckless acts or omissions of Defendants Workforce, Twin Staffing and client companies other than Segerdahl, currently unknown, alleged herein and specifically in paragraphs 18 – 60, *supra*, Plaintiff and similarly situated African American laborers have suffered damages of a pecuniary and non-pecuniary nature, humiliation, and degradation.

**COUNT VII**
**Violation of Title VII-Race-based Discrimination – Adverse Impact**
**Plaintiff on behalf of himself and a class of similarly situated African American laborers as laborers as against Defendant Segerdahl**
***Class Action***

Plaintiff hereby incorporates and re-alleges paragraphs 1 through 119 as though set forth herein.

120.    This Count arises under Title VII for Defendant Segerdahl's policy and practice of hiring Latino laborers over African American laborers through its agents or employment agencies, Workforce and Twin Staffing, as described more fully herein and specifically in paragraphs 18 - 60, *supra*, resulting in a significant adverse impact against Plaintiff and a class of African American laborers.

121. As described more fully herein and specifically in paragraphs 18 - 60, *supra*, Defendant Segerdahl has engaged in a practice of securing the vast majority of its laborers through its employment agencies, including Workforce and Twin Staffing.

122. Segerdahl's practice of securing laborers to work at its Illinois-based facilities from employment agencies which prefer to assign and, in fact, do assign Latino laborers over African American laborers has caused a significant disparate impact on Plaintiff and other similarly situated African American laborers in obtaining work assignments at Segerdahl.

123. As a direct and proximate result of the above-alleged acts or omissions of Defendant Segerdahl, Plaintiff and other similarly situated African American laborers suffered damages of a pecuniary and non-pecuniary nature, humiliation, and degradation.

124. Segerdahl failed to exercise reasonable care to ensure that its agents for the assignment of laborers, including Workforce and Twin Staffing, did not engage in discriminatory assignment practices.

**COUNT VIII**
**Violation of Title VII- Race-based Discrimination – Adverse Impact**
**Plaintiff on behalf of himself and a class of similarly situated African American laborers as laborers as against Defendants Workforce and Twin Staffing**
***Class Action***

Plaintiff hereby incorporates and re-alleges paragraphs 1 through 124 as though set forth herein.

125. This Count arises under Title VII for Defendants Workforce and Twin Staffing's policy and practice of assigning Latino laborers over African American laborers as described more fully herein and specifically in paragraphs 18 - 60, *supra*, resulting in a significant adverse impact on Plaintiff and a class of African American laborers.

126. As described more fully herein and specifically in paragraphs 18 - 67, *supra*, Defendants Workforce and Twin Staffing have engaged in a practice of assigning primarily

Latino employees to work at third party client companies, including but not limited to Segerdahl.

127.     Workforce and Twin Staffing's practice of showing a preference for assigning Latino laborers over African American workers to work at its third party clients, including but not limited to Segerdahl, has caused a significant disparate impact on Plaintiff and other similarly situated African-American laborers in obtaining work assignments through Workforce's Cicero Office.

128.     As a direct and proximate result of the above-alleged acts or omissions of Defendants Workforce and Twin Staffing, Plaintiff and other similarly situated African-American laborers suffered damages of a pecuniary and non-pecuniary nature, humiliation, and degradation.

129.     Defendants Workforce and Twin Staffing failed to exercise reasonable care to ensure that its agents did not engage in discriminatory assignment practices.

*     *     *

WHEREFORE, Plaintiff and the Class respectfully pray that this Court:

A.  allow this action to proceed as a class action against Workforce and Twin Staffing pursuant to Rule 23;

B.  allow this action to proceed as a class action against Segerdahl pursuant to Rule 23;

C.  enjoin Workforce, Twin Staffing and Segerdahl from continuing or permitting future violations of Title VII and 42 U.S.C. § 1981 for racial discrimination against African American laborers;

D.  enter a judgment in their favor and against Workforce, Twin Staffing and Segerdahl for back pay and front pay damages for Plaintiff and the Class in amounts to be determined at trial;

E.  grant all reasonable attorney's fees and costs in bringing this action;

F.  hold Workforce, Twin Staffing and Segerdahl jointly and severally liable to pay such damages and attorneys' fees and costs; and

G.  grant such other relief as this Court deems just and equitable.

Respectfully submitted,

Dated: May 29, 2018

_s/Christopher J. Williams_
Christopher J. Williams (ARDC #6284262)
Alvar Ayala (ARDC #6295810)
Workers' Law Office, P.C.
53 W. Jackson Blvd, Suite 701
Chicago, Illinois 60604
(312) 795-9121

Attorneys for Plaintiff